WILLIAM F. WAGNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wagner v. Commissioner
Docket No. 4519-80.
United States Tax Court
T.C. Memo 1984-245; 1984 Tax Ct. Memo LEXIS 432; 48 T.C.M. (CCH) 43; T.C.M. (RIA) 84245; May 7, 1984. Dante M. Scaccia, for the petitioner. Andrew R. Ceccherini, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax in the following amounts: Section 6653(b) [1]
Section 6654(a)
Taxable Year
Deficiency
Addition to Tax
Addition to Tax
1977
$6,061
$3,031
$121.23
1978
$8,023
$4,012
$246.48
On March 25, 1981, the Court granted respondent's motion to amend his answer to assert, as an alternative to the additions to tax for fraud, additions to tax pursuant to sections 6651(a)(1) *435 and 6653(a) for both taxable years in issue. After concessions, [2] the issues remaining for our consideration are as follows: (1) Whether petitioner is entitled to a business expense deduction under section 162 for expenses incurred in taking flying lessons during the taxable year 1978; (2) Whether petitioner is entitled to a depreciation deduction under section 167 for a barn for each of the taxable years 1977 and 1978; (3) Whether petitioner is liable for the addition to tax under section 6654(a) for taxable years 1977 and 1978; and (4) Whether any part of the underpayment of tax required to be shown on petitioner's Federal income tax returns for the taxable years 1977 and 1978 was due to fraud within the meaning of section 6653(b) or in the alternative, whether petitioner is liable for the additions to tax under sections 6651(a) and 6653(a) for both taxable years. *436 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner is a calendar year taxpayer. During 1977 and 1978 and at the time the petition was filed in the instant case, Mr. Wagner resided at R.D. #1, Fairchild Road, Remsen, New York. Mr. Wagner was employed as a solid state product process engineer in the aerospace electronics division of the General Electric Company in Utica, New York (General Electric) throughout 1977 and 1978. As of the date of trial, petitioner had been employed in that capacity for approximately 23 years. Petitioner received a Bachelor of Science Degree in physics from Utica College of Syracuse, New York. He utilizes his educational background in mathematics in his employment with General Electric where he is responsible for integrated circuit design and fabrication for military hardware. In April 1978, petitioner began a course of instruction in flying and expended a total of $1,871.26 during that year for dual and solo training in single engine aircraft. The Federal Aviation Administration issued Mr. Wagner a Private *437 Pilot's Certificate on or about March 3, 1979. Petitioner was neither employed as a pilot by General Electric during 1978 nor had any knowledge of whether his employer manufactured or produced any of the type aircraft (or parts thereof) which were used in petitioner's flying instruction. Petitioner received taxable wage income from General Electric during 1977 and 1978 of $22,404.97 and $26,405.74, respectively. General Electric provided petitioner with Wage and Tax Statements (Forms W-2) reflecting the amount of wages earned during each year. Although General Electric supplied these Forms W-2 to Mr. Wagner sufficiently in advance of the time in which petitioner's returns were required to be filed, the Forms were not attached to the 1977 and 1978 Forms 1040 that petitioner submitted to respondent. In addition to the taxable income earned from his employment with General Electric, petitioner received the following additional amounts of income during 1977 and 1978: 1977
1978
Musician Fees
$80.00
Rent
$200.00
200.00
State Tax Refund
[3] 239.61
Interest
.53
*438 The $200 in rental income received by petitioner during each of the years in issue was from one individual for the rental of a barn located at the Wagners' Fairchild Road residence. On July 12, 1974, petitioner submitted to General Electric a Form W-4 on which he claimed 20 exemptions. On April 21, 1976, petitioner submitted a Form W-4 claiming 10 exemptions and on May 5, 1978, he submitted a Form W-4 on which he claimed exempt status from withholding. From May 5, 1978 until the end of 1978, General Electric did not withhold any income taxes from Mr. Wagner's wage income. The Forms W-2 for 1977 and 1978 reflected that the following amounts were withheld from petitioner's salary: Federal Income
State Income
Year
Wages
Tax Withheld
Tax Withheld
1977
$22,404.97
$2,244.26
$ 827.43
1978
$26,405.74
$1,122.80
$1,212.51
The Form W-4 on which petitioner claimed exempt status from withholding remained in effect until December 1979. As a result, only $61.16 was withheld from his wages for the year 1979. Throughout 1977 and 1978 petitioner was married to Phyllis P. Wagner. She was not employed during these years. During these years, petitioner's *439 son, Kevin, and daughter, Lynn, were minors and attended school. Another son, Gregory, reached majority in 1977. From September 1977 and throughout 1978, Gregory attended college as a full-time student and petitioner furnished virtually all of his support. Petitioner is entitled to claim personal exemptions for himself and four dependents for each of the taxable years in issue. Mr. and Mrs. Wagner own their home and adjacent land in Remsen, New York as tenants by the entirety. Petitioner and his wife paid the following amounts in mortgage and other interest and property taxes during the years in question: Year
Interest
Property Taxes
1977
$696.91
$1,119.60
1978
$511.68
$1,195.36
Petitioner filed New York State income tax returns for the taxable years 1971 through 1976.Petitioner also filed timely Forms 1040 for each of the taxable years 1971 through 1976. However, with respect to the Forms 1040 filed for the years 1973 through 1976, Mr. Wagner eliminated the declarations "under penalties of perjury" appearing above his signature. During 1977, Mr. Wagner attended two seminars in Utica, New York sponsored by an individual who advocated the filing *440 of "Fifth Amendment" type tax "returns". For his 1977 taxable year, petitioner submitted to respondent a Form 1040 on which he entered his name, address, social security number, number of exemptions, checked his filing status (married filing separately), [4] and signed and dated it. He inserted the phrase "OBJECT: SELF INCRIMINATION" in response to each of the remaining statements and/or inquiries contained on the Form 1040 and attached 12 pages of literature relating to the Constitution. [5] Mr. Wagner submitted a similar Form 1040 for his 1978 taxable year in April of 1979. He entered his name, address, social security number, number of exemptions, checked his filing status and signed and dated the form. Petitioner again asserted Fifth Amendment rights in response to each of the remaining statements and/or inquiries contained on the Form and attached protest material similar to that attached to his Form 1040 for 1977. Petitioner did not seek legal advice or contact any of respondent's agents concerning the validity of the Forms 1040 he submitted for the taxable years 1977 and 1978. *441 William Van Shufflin, Special Agent with the criminal investigation division of the Internal Revenue Service in Utica, New York, first met with Mr. Wagner on November 28, 1978, at the General Electric plant. At that meeting petitioner refused to provide information concerning his 1977 tax liability or to answer even innocuous questions such as where he lived or the length of his employment with General Electric. Petitioner also refused to identify the Form 1040 he submitted for his 1977 taxable year, the Forms W-4 he submitted to his employer or his signature. Accordingly, the interview was terminated. During a conversation with petitioner in February of 1979, Mr. Van Shufflin informed Mr. Wagner that the Form 1040 he filed for his 1977 taxable year did not constitute a proper return. Subsequently, petitioner informed Mr. Van Shufflin that he would provide financial information concerning his income tax liabilities only if he were given a grant of immunity. Mr. Van Shufflin informed petitioner that he did not have such authority. The parties agreed to meet on March 7, 1979. On March 5, Mr. Wagner informed Mr. Van Shufflin that he had decided not to submit his records and, *442 accordingly, the March 7 meeting was cancelled. Mr. Van Shufflin obtained petitioner's Forms W-2 from General Electric and his Forms 1040 from the record center. Respondent concluded his criminal investigation of petitioner's 1977 income tax liability on April 7, 1979. Mr. Wagner was notified of this by respondent's Criminal Investigation Division in a letter dated April 9, 1979. Petitioner did not commence filing proper income tax returns until after respondent issued a Notice of Deficiency to him dated January 10, 1980, in which the addition to tax for fraud was asserted. [6]
OPINION The first issue for our consideration is whether petitioner is entitled to a deduction under section 162 for expenses incurred in 1978 for flight instruction. Section 162(a) allows as a deduction *443 "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Section 1.162-5(a), Income Tax Regs. permits a deduction for such expenses if the education -- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. Petitioner bears the burden of proving that his claimed deduction meets the requirements of the statute and respondent's regulations. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933.) Petitioner must establish that the educational expenses in question bear a proximate and direct relationship to his trade or business. Kornhauser v. United States,276 U.S. 145, 153 (1928); Schwartz v. Commissioner,69 T.C. 877, 889 (1978). We are unable to conclude that Mr. Wagner has met that burden. Petitioner is employed as a solid state product process engineer in *444 the aerospace electronics division of General Electric. In 1978, he incurred expenses of $1,871.26 for flight training in single engine aircraft.Petitioner's bare assertion that the flight training was helpful to him in his employment with General Electric does not suffice to prove the requisite proximate and direct relationship. See Carroll v. Commissioner,51 T.C. 213, 218 (1968), affd. 418 F.2d 91 (7th Cir. 1969). Nothing in this record suggests that it was customary for individuals in petitioner's position to obtain a pilot's license or that, beyond the benefits of periodic recreation, this activity was appropriate and helpful to petitioner's trade or business. At most, the flight training is only tenuously related to the skills required in petitioner's employment. We believe the expenses were incurred for purely personal reasons and, as such, the deduction is not allowable. Section 262; Wassenaar v. Commissioner,72 T.C. 1195, 1201 (1979). The second issue presented for our decision is whether petitioner is entitled to a depreciation deduction for a barn in each of the taxable years 1977 and 1978. Section 167(a) provides in *445 pertinent part: GENERAL RULE. --- There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear * * * * * * (2) of property held for the production of income. During each of the taxable years in issue, Mr. Wagner received $200 for the rental of a barn located near his residence. Petitioner seeks a deduction of $2500 for the depreciation of this barn for each of these years. Respondent argues that petitioner is not entitled to such deduction because he has failed to introduce any evidence relative to the barn's basis, useful life or salvage value. Again, this is an issue of fact and petitioner has the burden of proving entitlement to his claimed deduction.Rule 142(a); Welch v. Helvering,supra.
The barn in question is located on property on which petitioner's residence is located. Petitioner failed without explanation to produce any evidence of the purchase price of this property or of any allocation of such purchase price made to establish a basis in the barn. [7] Rather, it is petitioner's position that the basis of the barn is $25,000 because he has used that figure on unaudited Forms 1040 in claiming *446 a depreciation deduction for that item in prior taxable years. [8] A reference to the barn first appears on Mr. Wagner's 1974 Form 1040. On Schedule C of Form 1040, the barn is listed as having a basis of $25,000, a useful life of 10 years, and a claimed depreciation deduction of $2,500. This information also appears on petitioner's 1975 and 1976 Forms 1040. We are unable to accord this evidence any probative value particularly since petitioner crossed out the "under penalties of perjury" statement appearing above his signature on these prior Forms 1040. [9] The record is devoid of any credible evidence to support his position as to the basis of the barn. See section 1.167(g)-1, Income Tax Regs. Accordingly we hold that petitioner has failed to sustain his burden of proof. *447 We must next determine whether petitioner is liable for the addition to tax under section 6654(a) for each of the taxable years 1977 and 1978. Section 6654 provides for an addition to tax for an individual's failure to pay estimated income tax. Petitioner has the burden of proving that respondent's determination that the section 6654(a) addition to tax should be imposed is in error. Hollman v. Commissioner,38 T.C. 251, 263 (1962); Rule 142(a).
The addition to tax under section 6654(a) is mandatory unless petitioner can prove that he meets the requirements of one of the computational exceptions of section 6654(d). Gross-handler v. Commissioner,75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960). Petitioner did not introduce any evidence relating to this issue and does not address the matter on brief. Accordingly, respondent's determination is sustained. Rule 149(b). The final issue for our consideration is whether petitioner is liable for the addition to tax for fraud for his 1977 and 1978 taxable years. Section 6653(b) provides in relevant part: If any part of any underpayment * * * of *448 tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In contrast to the other issues considered herein, the burden of proving the applicability of the section 6653(b) addition to tax for fraud is on the respondent. Section 7454(a); Rule 142(b). In order to sustain this burden, respondent must affirmatively show, through clear and convincing evidence, that petitioners underpaid their taxes and that some part of such underpayment resulted from an intentional wrongdoing designed to evade taxes believed to be owing. Cefalu v. Commissioner,276 F.2d 122 (5th Cir. 1960); Estate of Pittard v. Commissioner,69 T.C. 391, 400 (1977). Although respondent need not show the exact amount of the underpayment which resulted from fraud, Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court, it must be shown by affirmative evidence that at least some fraudulent underpayment of tax in fact existed in order for respondent to prevail. Otsuki v. Commissioner,53 T.C. 96, 105 (1969). Respondent must show *449 that the taxpayer intended to evade taxes which he knew or believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. The Court may base its decision on this issue of fraud upon a consideration of the entire record, Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978), and is not limited to considering merely the affirmative evidence presented by the respondent. Stratton v. Commissioner,54 T.C. 255, 284 (1970); Imburgia v. Commissioner,22 T.C. 1002, 1014 (1954). Because direct evidence of fraudulent intent is seldom available, respondent may meet his burden of proof through circumstantial evidence derived from an examination of the entire course of conduct of the taxpayer. Brountas v. Commissioner,73 T.C. 491, 587 (1979), revd. on other grounds 692 F.2d 152 (1st Cir. 1982); *450 Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978); Stratton v. Commissioner,54 T.C. 255, 284 (1970). After a thorough consideration of petitioner's course of conduct and the entire record, we find and hold that respondent has met his burden of proving fraud by clear and convincing evidence for each of the years at issue. We find the following facts and circumstances significant. Petitioner is a college educated individual who works in a professional engineering capacity for a major corporation. As indicated by his Forms 1040 filed for years prior to those in issue, Mr. Wagner was aware of his obligation to report his income and to pay his tax liability for each taxable year. We note, however, that on the Forms 1040 for the four taxable years preceding the 1977 taxable year petitioner crossed out the declarations "under penalties of perjury" which appear above his signature. At some time during 1977 Mr. Wagner attended two seminars sponsored by an individual who advocated the filing of Forms 1040 which contain no financial information but instead object to all inquiries on the basis of the Fifth Amendment. Petitioner did not seek legal advice *451 or contact any of respondent's agents concerning the propriety of filing such a form in lieu of a proper return. During 1977, Mr. Wagner received an amount of income sufficient to require the filing of a return for that taxable year. Instead, petitioner submitted to respondent a Form 1040 on which he failed to furnish any information from which his tax liability could be determined. He also failed to attach his Form W-2 received from his employer. The law is clear that the Form 1040 petitioner submitted to respondent for his 1977 taxable year does not constitute a return as required by section 6011. United States v. Porth,426 F.2d 519, 523 (10th Cir. 1970); United States v. Daly,481 F.2d 28, 29 (8th Cir. 1973); Thompson v. Commissioner,78 T.C. 558, 561-562 (1982); Reiff v. Commissioner,77 T.C. 1169, 1177-1180 (1981); section 1.6011-1(b), Income Tax Regs. To qualify as a return, the Form 1040 must "contain sufficient data from which respondent can compute and assess his liability with respect to a particular tax." Cupp v. Commissioner,65 T.C. 68, 79 (1975), affd. without published opinion *452 559 F.2d 1207 (3d Cir. 1977); Houston v. Commissioner,38 T.C. 486, 491-492 (1962). Despite a warning by respondent's Special Agent in February of 1979, that the document submitted for petitioner's 1977 taxable year did not constitute a "return", petitioner subsequently filed a similar document for his 1978 taxable year. In light of petitioner's background and obvious knowledge of his duty to file income tax returns, we find that Mr. Wagner willfully failed to file returns for his 1977 and 1978 taxable years. It is well settled that the requirements that taxpayers file income tax returns in accordance with the provisions of the Internal Revenue Code and respondent's regulations does not violate the Fifth Amendment privilege against self-incrimination. Cupp v. Commissioner,supra;Hosking v. Commissioner,62 T.C. 635, 639 (1974). The privilege may be invoked only when an answer to the question posed would expose a person to a real danger of prosecution; remote or speculative possibilities of prosecution for unspecified crimes are not sufficient to justify a failure to respond. McCoy v. Commissioner,76 T.C. 1027 (1981), *453 affd. 696 F.2d 1234 (9th Cir. 1983). There is no evidence in the case before us that petitioner was subject to even a remote possibility of prosecution. At the time that petitioner filed his "Fifth Amendment" document in April of 1978, there was no ongoing investigation of any kind. After that Form 1040 was filed an investigation of petitioner's income tax liability was commenced inresponse to his failure to file a proper return. Respondent's Special Agent first met with Mr. Wagner on November 28, 1978. The investigation was concluded on April 7, 1979, and petitioner was notified of that fact in a letter dated April 9, 1979. Petitioner subsequently submitted a similarly deficient document for his 1978 taxable year. Petitioner also claimed excessive exemptions for the taxable years 1977 and 1978. Petitioner was entitled to only five exemptions during these years. However, on April 21, 1976, petitioner submitted a false Form W-4 to his employer on which he claimed 10 exemptions. This false Form W-4 was in effect throughout petitioner's 1977 taxable year and continued until May 5, 1978. On that date, petitioner submitted another Form W-4 to his employer *454 on which he claimed exempt status from withholding.[10] Accordingly, from May 5, 1978 until the end of the 1978 calendar year, petitioner's employer did not withhold any income taxes from petitioner's salary. In addition, this Form W-4 claiming exempt status continued in effect throughout virtually all of 1979, which resulted in only $61.16 being withheld on wage income of over $29,000.The submission of such false Forms W-4 is strong evidence of fraud. Rowlee v. Commissioner,80 T.C. 1111, 1125-1126 (1983); Hebrank v. Commissioner,81 T.C. 640 (1983). Another significant indicium of fraud is petitioner's failure to cooperate with respondent's agents. As a result of petitioner's refusal to respond to all requests for information, respondent's agents were forced to resort to third party sources to obtain information concerning petitioner's tax liability for 1977 and 1978. *455 Such refusal to cooperate with respondent's agents during the course of an audit is also evidence of fraud. Grosshandler v. Commissioner,75 T.C. 1, 20 (1980); Stoltzfus v. United States,398 F.2d 1002 (3d Cir. 1968). We are not persuaded that Mr. Wagner's actions were taken because he was "intellectually enamored" with the idea of protecting what he considered to be his Fifth Amendment rights. We observed petitioner during his testimony, and believed very little of what he said. Despite the "seminars" he attended, petitioner did not believe that the system of Federal taxation could be so easily defeated. Rather, we believe that petitioner's actions were taken to deprive the Government of income taxes known to be due and owing. See Habersham-Bey v. Commissioner,78 T.C. 304, 314 (1982). He simply had no intention of paying his taxes unless he was audited and forced to do so. In light of the facts and circumstances discussed above and our consideration of the entire record, we conclude that at least a part of petitioner's underpayment of tax for each of the taxable years at issue was due to fraud within the meaning of section *456 6653(b). Respondent's determination is sustained. [11]
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The following stipulations will be taken into account in the Rule 155 computation procedure: Petitioner is entitled to a deduction for general sales taxes for each of the years 1977 and 1978 as determined from the optional sales tax tables. Petitioner's medical insurance premiums for each of the taxable years in issue were $306.28. Petitioner incurred the following unreimbursed medical and dental expenses: 1977
1978
Medical
$323.68
$293.57
Dental
$644.00
$119.00
Transportation
$141.96
$112.84
Petitioner made charitable contributions during the years 1977 and 1978 in the amounts of $306 and $597, respectively.↩
3. Petitioner claimed New York state income tax as an itemized deduction in calculating his 1976 Federal income tax.↩
4. Mrs. Wagner did not elect to file a joint Federal income tax return with her husband for the taxable years 1977 and 1978. ↩
5. Apparently, Mr. Wagner purchased a packet of materials at the seminar which included instructions on filling out the Form 1040 as well as the materials which petitioner attached thereto.↩
6. We decline petitioner's invitation to reconsider our opinion in Hartman v. Commissioner,65 T.C. 542↩ (1975) in which we held that a petitioner's failure to file a return cannot avoid the determination of a deficiency under section 6211(a) and that section 6020(b)(1) does not require respondent to file a return for petitioner before issuing a statutory notice of deficiency.
7. We can conceive of no reason why such evidence would not be readily available to petitioners. We note that the failure to produce evidence which a party possesses and which, if true, would be favorable, gives rise to a presumption that if produced would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner,i 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947). 8. While petitioner does not contend that respondent is estopped from challenging petitioner's claimed basis because of failure to disallow its use in prior taxable years, see Tollefsen v. Commissioner,52 T.C. 671, 681 (1969), affd. 431 F.2d 511, 514 (2d Cir. 1970), he does contend that such figure is some evidence of the correct basis. See also Photo-Sonics, Inc. v. Commissioner,42 T.C. 926, 935 (1964), affd. 357 F.2d 656↩ (9th Cir. 1966). 9. We find petitioner's claimed basis particularly questionable since on his Forms 1040 for 1979 and 1980 the basis stated for the barn was increased to $75,000 with corresponding depreciation deductions claimed of $7,500 for each taxable year.↩
10. We note that by submitting a Form W-4 on which he claimed exempt status, petitioner represented under penalties of perjury that he incurred no liability for federal income tax for 1977 and anticipated incurring no liability for 1978. That certification was clearly false.↩
11. In view of our conclusion as to the issue of fraud, we do not address respondent's alternative assertions concerning the additions to tax under secs. 6651(a)(1) and 6653(a).↩